**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **CARRINGTON MORTGAGE SERVICES, LLC;** | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | **MO:25-CV-00132-DC-RCG** |
| | § | |
| **ARRON FLOTTE ACOSTA and** | § | |
| **SECRETARY OF HOUSING AND URBAN** | § | |
| **DEVELOPMENT,** | § | |
| *Defendants.* | § | |

<u>**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**</u>

BEFORE THE COURT is Plaintiff Carrington Mortgage Services LLC's ("Plaintiff") Motion for Default Judgment. (Doc. 15).[1] This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 15).

## I.    BACKGROUND

This action was commenced on January 22, 2025, in the 161st District Court, Ector County, Texas, against Aaron Flotte Acosta, the Secretary of Housing and Urban Development ("HUD"),[2] and Does 1 through 20, inclusive.[3] (Doc. 1-1). The action was removed to this Court on March 20, 2025. (Doc. 1).

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

2. On March 26, 2025, Plaintiff and HUD filed a Joint Motion for Entry of a Consent Order to streamline the litigation. (Doc. 7). The Court granted the Motion and substituted the United States of America for HUD, granting the relief sought by Plaintiff against the United States and relieving the United States from making any further court appearances. (Doc. 8).

3. On October 20, 2025, Plaintiff voluntarily dismissed Does 1 through 20, inclusive, from the case. (Doc. 17).

The relevant factual allegations are as follows. On April 30, 2020, Aaron Flotte Acosta ("Defendant Acosta") made, executed, and delivered a Note in which he promised to pay the sum of $185,919.00, with interest. (Doc. 1-1 at 11). Plaintiff is the current owner and holder of the Note. *Id*. Subsequently, the Note was secured by a Deed of Trust executed by Defendant Acosta encumbering a piece of real property. *Id*. The property in question is commonly known as 9101 Rustler Avenue, Odessa, Texas 79765 (the "Property"), more particularly described as:

> LOT EIGHTY-EIGHT (88), BLOCK FOUR (4), RATLIFF RIDGE, 4TH FILING, PHASE 1, AN ADDITION TO THE CITY OF ODESSA, BEING A SUBDIVISION OF 20.87 ACRES OF LAND IN SECTION 35, BLOCK 42, T-1- S, T&P RR CO. SURVEY, ECTOR COUNTY, TEXAS, ACCORDING TO THE MAP, PLAT AND/OR DEDICATION DEED THEREOF RECORDED IN CABINET C, PAGE 94-C, OF THE PLAT RECORDS OF ECTOR COUNTY, TEXAS.

*Id*. Plaintiff is the current assignee of the Deed of Trust. *Id*. at 12. On March 28 2022 and June 13, 2023, Defendant also executed and delivered Partial Claim Deeds of Trust to HUD. *Id*. Defendant Acosta became delinquent in the payments due on the Note by failing and refusing to pay the installment due on September 1, 2024, and all installments due after that date. *Id*. Plaintiff notified Defendant Acosta of his default. *Id*. As of December 12, 2025, to pay off the loan in full, Defendant Acosta owes $184,840.76. (Doc. 15 at 4).

Summons in this case was issued as to Defendant Acosta before the case was removed to this Court. (Doc. 1-1 at 77). On April 18, 2025, Plaintiff filed executed summons as to Defendant Acosta. (Doc. 5). Plaintiff's proof of service shows Defendant Acosta was personally served by process server at 9101 Rustler Avenue, Odessa, Texas 79765. *Id*. On August 25, 2025, the Court ordered Defendant Acosta to show cause why he had not filed a responsive pleading in this case. (Doc. 10). To date, Defendant Acosta has failed to answer Plaintiff's Complaint or otherwise make an appearance in this lawsuit. On October 28, 2025, Plaintiff filed a Motion for Clerk's

Entry of Default. (Doc. 12). The next day, the Clerk of Court entered default against Defendant Acosta. (Doc. 13). On January 26, 2026, Plaintiff filed the instant Motion for Default Judgment. (Doc. 15).

Plaintiff seeks (1) a money judgment against Defendant Acosta for $184,840.76 plus post-judgment interest at the legal rate until paid in full; (2) attorney fees and costs against Defendant Acosta in the total amount of $9,172.19[4]; (3) an order of judicial foreclosure of the Property against Defendant Acosta; and (4) that the Property be sold via a public sale pursuant to applicable law. (Doc. 15). A hearing was held on the instant Motion for Default Judgment on April 30, 2026. (Docs. 15, 20). Accordingly, this matter is now ripe for disposition.

## II.    LEGAL STANDARD

After entry of default and upon a motion by the plaintiff, Federal Rule of Civil Procedure 55 authorizes the Court to enter a default judgment against a defendant who fails to plead or otherwise defend the suit. FED. R. CIV. P. 55(b). However, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Instead, the district court "has the discretion to decline to enter a default judgment." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In determining whether to enter a default judgment, courts utilize a three-part test. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384

---

4. Following the hearing on Plaintiff's Motion for Default Judgment, Plaintiff's counsel provided a supplemental affidavit regarding attorney fees and costs. (Doc. 21).

(W.D. Tex. 2008). First, courts consider whether the entry of default judgment is procedurally warranted. *Id*. The factors relevant to this inquiry include:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. Second, courts assess the substantive merits of the plaintiff's claims, determining whether the plaintiff set forth sufficient facts to establish his entitlement to relief. *See 1998 Freightliner*, 548 F. Supp. 2d at 384. In doing so, courts assume that, due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Third, courts determine what form of relief, if any, the plaintiff should receive in the case. *Id.*; *1998 Freightliner*, 548 F. Supp. 2d at 384. Generally, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

### III.    DISCUSSION

Applying the three-part analysis detailed above, the Court finds Plaintiff is entitled to a default judgment.

### A.  Default Judgment is Procedurally Warranted

In light of the six *Lindsey* factors enumerated above, the Court finds that default judgment is procedurally warranted. First, Defendant Acosta has not filed any responsive pleadings or otherwise appeared in this case. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."). Second, Defendant Acosta's

4

total failure to respond has brought the adversarial process to a halt, effectively prejudicing Plaintiff's interests. *Lindsey*, 161 F.3d at 893. Third, the grounds for default are "clearly established" since over the course of this case, Defendant Acosta has not responded to the summons and Complaint, the Court's Show Cause Order, the Entry of Default, or Plaintiff's Motion for Default Judgment. *See J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011) (finding default judgment is appropriate if defendants are totally unresponsive and the failure to respond is plainly willful, as reflected by the parties' failure to respond either to the summons and complaint, the entry of default, or the motion for default judgment).

Fourth, there is no evidence before the Court indicating Defendant Acosta's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendant Acosta has had over a year to respond to Plaintiff's claims or otherwise appear in this matter. Consequently, any purported harshness of a default judgment is mitigated by Defendant Acosta's inaction for this lengthy time period. *United States v. Rod Riordan Inc.*, No. 17-CV-071, 2018 WL 2392559, at *3 (W.D. Tex. May 25, 2018). Finally, the Court is not aware of any facts that give rise to "good cause" to set aside the default if challenged by Defendants. *Lindsey*, 161 F.3d at 893. Therefore, the Court finds default judgment is procedurally warranted under these circumstances.

## B. Default Judgment is Substantively Warranted

Due to the entry of default, Defendant Acosta is deemed to have admitted the allegations outlined in Plaintiff's Complaint. *See Nishimatsu Constr.*, 515 F.2d at 1206. Even so, the Court must review the pleadings to determine whether Plaintiff pleaded a sufficient basis for its claims to relief. *See id.* Federal Rule of Civil Procedure 8 guides this analysis:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal citations and footnote omitted) (alteration in original). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Id.*

Here, Plaintiff does not technically plead a cause of action. (*See* Doc. 1-1 at 9). Rather, Plaintiff seeks judicial foreclosure of the Property and a money judgment for the outstanding balance of the Note. *Id.* at 9–10. However, judicial foreclosure is a remedy rather than a cause of action. *U.S. Bank Nat'l Ass'n v. Ross*, No. 15-2385, 2017 WL 2730769, at *1 (S.D. Tex. June 26, 2017) (citing *In re Erickson*, 566 F. App'x. 281, 284 (5th Cir. 2014) (unpublished) (holding that the lender "had a right to pursue judicial foreclosure as a remedy")). Despite this, a majority of courts "appear to cut in favor of reading a breach of contract claim into a judicial foreclosure claim, where only the latter is pleaded." *Ocwen Loan Servicing, LLC v. Kingman Holdings, LLC*, No. 18-CV-1197, 2019 WL 3802167, at *5 (N.D. Tex. May 31, 2019) (collecting cases). The undersigned will do the same and "recommend that the Court find a breach of contract claim subsumed in the pleaded judicial foreclosure claim and that such a reading would satisfy the pleading requirements under Rule 8(a)." *Id.* at *5.

For a Texas breach of contract claim, styled as a judicial foreclosure claim, a plaintiff must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the

6

plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC*, 51 S.W.3d 345, 351 (Tex. Ct. App.—Houston [1st. Dist.] 2001, reh'g overruled)). Here, on December 16, 2020, Defendant Acosta executed and delivered a Note to the original lender promising to pay the sum of $ 185,919.00, with interest. (Doc. 1-1 at 11). Plaintiff subsequently became the owner and holder of the Note. *Id*. Defendant Acosta then executed and delivered a Deed of Trust to secure performance of the trustor's obligations under the Note; the Deed of Trust was then assigned to Plaintiff. *Id*. at 12. By executing the Deed of Trust, a lien was granted on the Property for any breach. *Id*. at 13. However, payments on the Note have gone unpaid since September 1, 2024. *Id*. at 12. Notice of default and request to cure were mailed to Defendant Acosta. *Id*. Defendant Acosta has directly and proximately caused damage to Plaintiff as the Note remains unpaid. *Id*. Thus, Plaintiff has stated a claim for breach of contract.

## C. Plaintiff's Right to Relief

### 1. Judicial Foreclosure

As previously stated, damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. On April 30, 2026, pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court held an evidentiary hearing covering the issue of remedy. (Doc. 20). Plaintiff seeks a judicial foreclosure of the Property due to Defendant Acosta's loan default. At the hearing, Plaintiff's counsel pointed to the affidavit titled "Plaintiff's Servicemembers Declaration," which affirms the authenticity of the Note and Deed of Trust. (Doc. 15-3).

"In determining whether a party is entitled to foreclose on a promissory note secured by real property, a federal court applies the substantive law of the forum state, in this case Texas."

*U.S. Bank Nat'l Assoc. v. Vallejo*, No. 16-CV-00009, 2016 WL 4400314, at *4 (W.D. Tex. Aug. 16, 2016) (citing *Resolution Tr. Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995)). "Under Texas law, lenders have a substantive right to elect judicial or nonjudicial foreclosure in the event of a default . . . ." *Douglas v. NCNB Tex. Nat'l Bank*, 979 F.2d 1128, 1130 (5th Cir. 1992). To obtain a judicial foreclosure in this case, Plaintiff is required to show "(1) the existence of a note secured by real property; (2) that some part of the note is due and unpaid; and (3) that the real property subject to the lien is the same property that it seeks to foreclose." *TFHSP, LLC Series 10147 v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2589, 2016 WL 2856006, at *3 (N.D. Tex. Apr. 18, 2016); *Rinard v. Bank of Am.*, 349 S.W.3d 148, 152 (Tex. App.—El Paso 2011, no pet.) ("To obtain a judicial foreclosure, Bank of America was required to demonstrate that the note was a purchase money note, that some part of the purchase money is due and unpaid, and that the property subject to the lien is the same property on which it seeks to enforce the lien."); *Ocwen Loan Servicing LLP v. Smalley*, No. 14-CV-03039, 2015 WL 9873741, at *3 (N.D. Tex. Nov. 6, 2015); *Thomas v. Ocwen Loan Servicing, LLC*, No. 12-CV-447, 2013 WL 30653, at *5 (N.D. Tex. Jan. 3, 2013) (addressing the distinction between a foreclosure of a purchase money loan and a home equity lien). Because the Court finds Plaintiff sufficiently established it is the owner of the Note, part of the Note is due and unpaid, and the property subject to the lien is the same property it seeks to foreclose, Plaintiff can enforce its rights and properly elect to proceed with judicial foreclosure. (*See* Docs. 1-1, 15, 15-3).

### 2. Post-Judgment Interest

In its Motion for Default Judgment, Plaintiff also requests post-judgment interest at the legal rate until paid in full. (Doc. 15 at 9). "The issue of post-judgment interest on a judgment entered in federal court is governed by federal law." *Lohr v. Gilman*, No. 15-CV-1931,

8

2018 WL 6199290, at *11 (N.D. Tex. Nov. 28, 2018) (citing *Hall v. White, Getgey, Meyer Co.*, 465 F.3d 587, 594–95 (5th Cir. 2006)); *First Horizon Home Loans v. Sec. Mort. Corp.*, No. 09-CV-2182, 2010 WL 3659908, at *2 (N.D. Tex. Sept. 16, 2010) ("Regardless of whether a cause of action is based on state law or federal law, federal law determines post-judgment interest.") (citing *Bos. Old Colony Ins. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (noting that federal post-judgment interest applies even in diversity cases)). The statute 28 U.S.C. § 1961 "provides, in pertinent part, that 'interest shall be allowed on any money judgment in a civil case recovered in a district court' and that such 'interest shall be calculated from the date of entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.'" *Lohr*, 2018 WL 6199290, at *11 (citing 28 U.S.C. § 1961(a)). Therefore, Plaintiff is entitled to an award of post-judgment interest at the rate published for the week ending prior to the date of judgment until the date paid.

### 3. Attorney Fees

Finally, in its Motion for Default Judgment, Plaintiff requests attorney fees and costs. (Doc. 15 at 4). Under Texas law, attorney fees may be recovered pursuant to mortgage contracts. *U.S. Bank Nat'l Ass'n v. White*, No. 24-CV-1212, 2025 WL 714250, at *5 (N.D. Tex. Feb. 10, 2025). Here, by the terms of the Note and Plaintiff's Deed of Trust, Defendant Acosta agreed to pay reasonable attorney fees if the lender required the services of an attorney in the enforcement of the Note. (Doc. 1-1 at 13).

In the Fifth Circuit, courts apply a two-step method for determining a reasonable attorney fee award. *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). First, a court must calculate the "lodestar" amount, which is equal to the number of hours reasonably expended on

the case multiplied by the hourly rate in the community for similar work. *Id*. at 392. In performing this calculation, the Court excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. *Id*.; *see Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The party seeking reimbursement of attorney fees bears the burden to provide sufficient evidence that is adequate for the Court to determine reasonable hours expended. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995).

However, once the Court determines the lodestar, it may enhance or decrease the amount of attorney fees based on the relative weights of the twelve *Johnson* factors. *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 157 (5th Cir. 2015); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. 448 F.2d at 717–19. Notably, "[a] strong presumption exists that the lodestar represents a reasonable fee that should be modified only in exceptional circumstances." *Payne v. Univ. of S. Miss.*, 681 F. App'x 384, 390 (5th Cir. 2017) (quoting *Pembroke v. Wood County.*, 16 F.3d 1214 (5th Cir. 1994)).

Following the hearing on Plaintiff's Motion for Default Judgment, Plaintiff's counsel, Ms. Tasha James, provided a supplemental declaration regarding attorney fees and costs, which

indicates the hours spent litigating this case are well grounded and justified. (Doc. 21). According to the submitted records, Ms. James states that Plaintiff agreed to compensate her at an hourly rate of $225.00 for attorney work and $85.00 for work performed by paralegals and legal assistants, resulting in total attorney fees of $8,320.00. *Id*. Having reviewed Ms. James's declaration, the Court finds this hourly rate is reasonable for an attorney practicing in Ms. James's field with comparable experience to her. *Id*. Thus, Plaintiff should be awarded $8,320.00 in reasonable attorney fees from Defendant Acosta.

Finally, Plaintiff seeks costs of $852.19 (Doc. 21). Plaintiff provides the costs went to filing and issuance of its Petition and Citations. *Id*. Therefore, Plaintiff should be awarded $852.19 in costs from Defendant Acosta.

### IV.    RECOMMENDATION

For the aforementioned reasons, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment be **GRANTED**. (Doc. 15). Further, the Court **RECOMMENDS** a final judgment be entered against Defendants as follows:

The Court **FINDS** that AARON FLOTTE ACOSTA executed and delivered to Gateway Mortgage Group, a division of Gateway First Bank, a promissory Note in the principal amount of $185,919.00, dated December 16, 2020 ("Note").

The Court further **FINDS** that concurrently with the execution of and to secure the Note, AARON FLOTTE ACOSTA executed a Deed of Trust granting a lien on the Property, described above, which Deed of Trust was recorded December 17, 2020, as Instrument No. 2020- 24171 of the Official Public Records of Ector, Texas. ("Deed of Trust").

The Court further **FINDS** that AARON FLOTTE ACOSTA, executed a Loan Modification Agreement recorded on June 13, 2023, as Instrument Number 2023-00009956 of the Official Public Records of Ector County, Texas.

The Court further **FINDS** that AARON FLOTTE ACOSTA, executed a second Loan Modification Agreement recorded on August 6, 2024, as Instrument Number 2024-00013746 of the Official Public Records of Ector County, Texas.

The Court further **FINDS** that Plaintiff is currently the holder of the Note and beneficiary of the Deed of Trust, by way of endorsements on the Note and a valid chain of assignments, the last of which was duly recorded on October 4, 2024, as Instrument No. 2024- 00017827 in the Official Public Records of Ector County, Texas.

The Court further **FINDS** the loan servicing records show that the loan has been in default since September 1, 2024, and the loan was accelerated and the total balance is now due. The total amount due and owing on the loan as of December 12, 2025, is $184,840.76, plus prejudgment interest at the per annum rate of 4.500% until the date of judgment.

The Court further **FINDS** that AARON FLOTTE ACOSTA is obligated for the amounts due under the terms of the loan agreement and have defaulted by failing to make payments when due, the requisite notices to cure the default have been provided, the default has not been cured and the maturity of the debt has been accelerated in accordance with the Deed of Trust, Texas Property Code 51.002 and applicable law. Post-judgment interest shall accrue on the balance at the applicable statutory rate. All conditions precedent to foreclosure have been accomplished.

The Court further **FINDS** Plaintiff filed this lawsuit to foreclose its security interest against the Property due to the material default in payment of the indebtedness secured by the Property in the case styled Carrington Mortgage Services, LLC v. Aaron Flotte Acosta, Secretary

12

of Housing and Urban Development and Does 1 Through 20, Inclusive; No. B25010084CV, in the 161st District Court of Ector Court, Texas (the "State Court Action").

The Court further **FINDS** that Defendant Secretary of Housing and Urban Development filed a Notice of Removal on March 20, 2025.

The Court further **FINDS** that AARON FLOTTE ACOSTA was personally served with process on March 4, 2025. The Return of Service was filed with this Court on April 18, 2025. Defendant AARON FLOTTE ACOSTA has not filed an answer or any pleading constituting an answer and has not entered an appearance.

The Court further **FINDS** that United States of America on behalf of the Department of Housing and Urban Development ("United States") was served with process on March 5, 2025. The United States filed its Removal and on April 25, 2025, the Court entered a Consent Order stating that the "relief sought by Plaintiff in its Petition as against the United States was granted to the extent set forth in the Consent Order." See Consent Order, pg. 2. In the Consent Order, the United States indicated it "does not oppose the Court entering judgment in favor of Plaintiff and ordering the Property sold at public sale." Id at pg. 1. Plaintiff incorporates the Consent Order, herein, by reference.

The Court further **FINDS** that the Clerk of Court entered a default judgement against Defendant AARON FLOTTE ACOSTA on October 29, 2025.

It is therefore **ORDERED**, **ADJUDGED**, and **DECREED** that:

1. Plaintiff recover the amount under the loan agreement with a foreclosure of the loan agreement against the Property and that an order of sale shall issue to any sheriff or constable within the State of Texas directing him or her to seize and sell the same as under execution, to be paid towards the satisfaction of the Plaintiff.

13

2. This judgment shall have all the force and effect of a writ of possession as between the parties to this suit and also as to any person claiming a right in the Property. The sheriff, constable, or other officer executing this judgment for foreclosure sale shall proceed by virtue of such judgment to place the purchaser of the Property sold at the foreclosure sale in possession of the Property within thirty days of the foreclosure sale.

3. All right, title, and interest of AARON FLOTTE ACOSTA, as well as the subordinate lien of the Secretary of Housing and Urban Development in the Property encumbered by the loan agreement is subject to foreclosure.

4. If AARON FLOTTE ACOSTA, within thirty days after entering of the final judgment, fails to pay Plaintiff the full amount due under this judgment, the property shall be sold in accordance with Texas Rule of Civil Procedure 309 at public auction to the highest bidder.

5. The Property be sold at a foreclosure sale, and the United States Marshals in the Western District of Texas are directed and ordered to seize and sell the Property, with the proceeds to be paid toward the satisfaction of the below money judgment awarded to Plaintiff Carrington Mortgage Services, LLC.

6. This judgment SHALL have all the force and effect of a writ of possession as between the parties to this suit and also as to any person claiming a right in the Property. The United States Marshal executing this judgment for foreclosure sale shall proceed by virtue of such judgment to place the purchaser of the Property sold at the foreclosure sale in possession of the Property within thirty days of the foreclosure sale.

7. The sheriff or constable conducting the sale SHALL deduct out of the proceeds of the foreclosure sale its reasonable fees for conducting the sale and SHALL distribute the remaining proceeds in accordance with the terms of the Deed of Trust. If any sales proceeds remain, they shall be distributed then pursuant to the Consent Order between Plaintiff and the Secretary of Housing and Urban Development and then to inferior lienholders in order of lien priority.

8. Plaintiff is awarded a judgment in the amount of $184,840.76 plus pre-judgment interest at the daily per annum rate of 4.500% until the date of judgment and post-judgment interest at the rate of 3.68% per annum until paid in full.

9. Costs of court are hereby taxed against the party by whom they were incurred.

10. Plaintiff may recover its attorney's fees in the amount of $8,320.00.

11. Plaintiff may recover its costs in the amount of $852.19.

12. All writs and process necessary for the execution and enforcement of this judgment shall be issued by the Clerk of the Court

13. The Consent Order as to United States of America entered on April 25, 2025, is a Final Judgment and disposes of all claims related to the United States of America. All relief not expressly granted is DENIED.

14. This judgment finally disposes of all parties and all claims related to the Property and is appealable.

SIGNED this 5th day of May, 2026.


RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

15

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party ***has not been served*** by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).